**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **DAWN WAGONER** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CAUSE NO.** |
| | § | |
| **FERTITTA HOSPITALITY, LLC** | § | |
| **Defendant** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW, DAWN WAGONER,** Plaintiff in the above numbered and styled cause, and files this Plaintiff's Original Complaint complaining of Fertitta Hospitality LLC, Defendant herein, and for causes of action would respectfully show unto this Court as follows:

## I. PARTIES

1. Plaintiff Dawn Wagoner ("Plaintiff" or "Wagoner") is an individual residing in Galveston, Galveston County, Texas.

2. Defendant Fertitta Hospitality, LLC ("Defendant" or "Fertitta") is a corporation duly formed and existing under the laws of the State of Texas and may be served with process through its registered agent, Steven L. Scheinthal, 1510 West Loop South, Houston, TX 77027.

## II. JURISDICTION

3. Jurisdiction is appropriate and proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1331 because this matter is a

civil action that arises under the laws of the United States. Jurisdiction is also proper pursuant to 28 U.S.C. §1343(a)(4) because Plaintiff seeks to recover damages or to secure equitable relief under Title VII, which is an Act of Congress which provides for the protection of civil rights. Jurisdiction is also appropriate under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

## III. VENUE

4. Venue is appropriate and proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391 because the causes of action alleged herein occurred in Galveston, Galveston County, Texas.

## IV. FACTS

5. Wagoner is a female.

6. On or about June 6, 2024, Wagoner began working for Defendant as Pool Supervisor.

7. During her employment with Defendant, Wagoner was sexually harassed by Eric Ellingsworth, who worked as a Chief of Engineering for Defendant. Specifically, on or about January or February 2025, Ellingsworth grabbed his chest where a woman's breast would be located and said "let's lift those up, let's see those, and how about you were a shorter skirt." He also told Wagoner "How about I give you a key to my apartment?" When Wagoner refused Ellingsworth's sexual advances and said "I'm not interested," Ellingsworth spread a rumor around the workplace that Wagoner is a homosexual.

8. Wagoner reported Ellingsworth's sexually harassing behavior to Jodi Jones (Jones) of the Human Resources (HR) Department on or about the same week that Ellingsworth sexually harassed Wagoner. Specifically, Wagoner told Jones that Ellingsworth had grabbed his chest where a woman's breast would be located and said "let's lift those up, let's see those, and how about you were a shorter skirt." Wagoner also told Jones that Ellingsworth had told Wagoner "How about I give you a key to my apartment?" Finally, Wagoner told Jones that when Wagoner refused Ellingsworth's sexual advances by saying "I'm not interested," Ellingsworth spread a rumor around the workplace that Wagoner is a homosexual.

9. After Wagoner reported Ellingsworth's sexual harassment to Jones in HR, Wagoner was then harassed by Chris Evans, who was the new Chief of Engineering. Specifically, Evans told Wagoner "it's a shame you swing that way." Not only was this a sexually harassing comment about Wagoner supposedly being gay, but Evans was also making an unwelcome pass at Wagoner. Evans first made this comment on or about October 2025. Unfortunately, Evans continued making this same comment to Wagoner every day, multiple times a day for approximately one month.

10. Approximately one week after Evans began sexually harassing Wagoner in this manner, she reported this behavior to Sonja, who was the Assistant Food and Beverage Manager. Sonja told Wagoner to report this to Johnny Reyes.

11. Wagoner then reported Evans' sexually harassing behavior to Johnny Reyes the same afternoon after Sonja told Wagoner to report to Reyes. Reyes told Wagoner "Oh Dawn, it's probably not that serious."

12. After Reyes refused to take Wagoner's complaint of sexual harassment seriously, she complained to Tara Headley, who was the Assistant General Manager. Wagoner was able to make this complaint a couple of weeks after speaking with Reyes. Headley told Wagoner that she would be able to speak with General Manager Jeremy Bucka.

13. Approximately two weeks after Wagoner complained to Headley, Wagoner was finally able to speak with Bucka. Bucka informed Wagoner "we need to go to HR."

14. Approximately two days after Mr. Bucka told Wagoner "We need to go to HR," Wagoner and Jodi Jones had a meeting. Wagoner told Jones about the sexually harassing comments that Evans was repeatedly making to Wagoner. Jones responded by saying "We've already discussed your complaint about this." Wagoner clarified that although they had previously discussed Ellingsworth's sexually harassing behavior, Wagoner and Jones had not discussed Evans' sexually harassing behavior. In response, Jones stated that she would "do some investigating."

15. After the HR meeting with Jodi Jones, Wagoner was sent back to work that same day. When she tried to return to her job, Wagoner was informed that a contract person had been hired to do the work that Wagoner would ordinarily be doing. When Wagoner spoke with her direct supervisor (Sonja) to ask what was happening, Sonja said to Wagoner **"You are not needed today." This had never happened to Wagoner before. Wagoner was then <u>sent home</u> and was not paid for the rest of the day.**

16. Prior to complying with Sonja's order to leave Defendant's workplace, Wagoner gave Sonja the keys that Wagoner would ordinarily use during the workday to retrieve towels and other items. The keys that Wagoner used during the workday to retrieve towels and other items belonged to Defendant, and Wagoner was not allowed to take those keys home and away from Defendant's place of business.

17. When Wagoner got to her home, she called Sonja and asked "What's going on?" Wagoner was told by Sonja that she would "speak with Johnny" and "they would get back with" Wagoner. Wagoner then called Cassie Franklin, who was working in the same office with General Manager Jeremy Bucka. Franklin told Wagoner to contact HR in the morning.

18. Consistent with Cassie Franklin's advice, Wagoner called Jodi Jones the next day. Because Jones did not answer her phone, Wagoner left a voice message for Jones. When Jones finally called Wagoner back, Jones said "You're no longer needed." Jones the proceed to hang up the phone. Wagoner called back and eventually got Jones to explain the "reason" for Wagoner's termination. Jones said "Dawn, you turned in your keys and you abandoned your job."

19. Wagoner did not abandon her job. She was ordered by her direct supervisor (Sonja) to go home for the day. Because Wagoner was not allowed to take Defendant's keys home, she gave those keys to Sonja. Jones stated reason for Wagoner's termination is false.

20. Wagoner was terminated on or about November 17, 2025. The official reasons she was fired were that "she was on longer needed" and "that she had abandoned her job." Both these reasons are false. The real reasons she was fired were

because of her sex (female) and in retaliation for her opposing Defendant's unlawful sexual harassment of her by complaining to her supervisors as well as to Defendant's Human Resources Department about the sexual harassment that she was being subjected to.

## V. CAUSES OF ACTION

### DISCRIMINATION BASED ON SEX UNDER TITLE VII

21. Plaintiff hereby incorporates all the facts contained in §IV of this Original Complaint as if set forth fully herein.

22. Defendants violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against her and harassing her because of her sex (female).

23. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

### RETALIATION IN VIOLATION OF TITLE VII

24. Plaintiff hereby incorporates all the facts contained in §IV of this Plaintiff's Original Complaint as if set forth fully herein.

25. Plaintiff reported sex discrimination in violation of Title VII to Defendant, the EEOC, and the Texas Workforce Commission, Civil Rights Division.

26. Defendants have unlawfully retaliated against Plaintiff by firing her for engaging in opposition activity when she complained that she had been sexually harassed. Defendants' actions violated §704 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a).

27. The effect of the practices complained of above have been to deprive Plaintiff of

equal employment opportunities and otherwise adversely affect her status as an employee, including, but not limited to the discharge of Plaintiff because she reported and otherwise opposed discriminatory practices and acts in the workplace.

**STATUTORY DAMAGES**

28. Plaintiff has been forced to incur reasonable attorney's fees and court costs and seeks to recover for these costs pursuant to 42 U.S.C. §2000-e-5(k).

29. Additionally, Plaintiff states that Defendant engaged in the discriminatory practices alleged with malice or reckless indifference to Plaintiff's federally protected rights, and Defendant is liable for punitive damages pursuant to 42 U.S.C. §1981a(b).

**VI. PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendant be cited to appear herein, and that after trial by jury, a judgment be entered granting Plaintiff the following:

A. Plaintiff be reinstated to her previous position by Defendant. In addition, Defendant must make Plaintiff whole for all earnings she would have received had it not been for Defendant's discriminatory and tortious treatment including, but not limited to, wages (including back pay and front pay), bonuses, pension and other lost benefits;

B. actual damages;

C. punitive damages;

D. pre-judgment and post-judgment interest at the maximum rate permitted by law;

E. reasonable and necessary attorney's fees in an amount to be shown to the satisfaction of the court;

F. cost of court; and

G. such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself justly entitled under all attending facts and circumstances.

Respectfully submitted,

*/s/ Andrew L Mintz*
Andrew L. Mintz
Texas Bar No. 24037120
SD TX I.D. No. 35220
andrew@almintzlawfirm.com
ANDREW L. MINTZ, PLLC
2100 West Loop South, Suite 1125
Houston, Texas 77027
Ph: (713) 859-3828
Fax: (832) 626-0389

**ATTORNEY FOR PLAINTIFF DAWN WAGONER**